[661 NYS2d 208]

In the Matter of JOSE M. BETANCOURT, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, July 24, 1997

#### APPEARANCES OF COUNSEL

*Elyse N. Post* of counsel *(Hal R. Lieberman,* attorney), for petitioner. *Michele L. Pahmer* of counsel *(Stroock & Stroock & Lavan),* and *Marie V. Santacroce* of counsel *(Kasowitz, Benson, Torres & Friedman),* Special Trial Counsel.

*John Carro* of counsel *(Carro, Velez, Carro & Mitchell, L. L. P.,* attorneys), for respondent.

#### OPINION OF THE COURT

Per Curiam.

Respondent, Jose M. Betancourt, was admitted to the

practice of law in the State of New York by the Second Judicial Department on November 14, 1979. At all times pertinent to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.

Respondent was charged with neglecting five separate legal matters and misleading the Committee with respect to his action on at least two of these cases.

Thereafter, he was also charged with improper use of his attorney escrow account.

After hearings, the Hearing Panel reviewed the evidence and sustained 21 of 22 charges and recommended that respondent be suspended for three years.

The Mercer Matter

Charges One through Four pertain to respondent's representation of Melvin Mercer in connection with the wrongful repossession of Mercer's automobile by General Motors Acceptance Corporation (GMAC).

Charge One, which the Hearing Panel sustained, alleged that by his failure to diligently pursue Mercer's claim against GMAC and his inattention to Mercer's defense in action brought by GMAC, respondent neglected a legal matter entrusted to him, in violation of Code of Professional Responsibility DR 6-101 (A) (3) (22 NYCRR 1200.30).

Charge Two, which the Hearing Panel sustained, alleged that by permitting a default judgment and garnishment order to be entered against Mercer, respondent prejudiced and damaged his client, in violation of DR 7-101 (A) (3) (22 NYCRR 1200.32). Charge Four alleged that by failing to bring a lawsuit on Mercer's behalf and permitting a default judgment to be entered against Mercer without moving to vacate same, respondent has engaged in conduct which reflects adversely on his fitness to practice law, in violation of DR 1-102 (A) (6) (now [8]) (22 NYCRR 1200.3).

Charge Three alleged that respondent's request for a fee in contravention of the fee arrangement with Mercer reflects adversely on his fitness to practice law, in violation of DR 1-102 (A) (6) (now [8]).

The Caban Matter

Charges Five through Nine pertain to respondent's representation of Josephine Liza Torres Caban in settling her father's estate.

In May 1989, Caban retained respondent in order to settle her father's estate and respondent told her he would im-

mediately obtain the letters of administration and the entire process would take about one month. Pursuant to a retainer agreement, Caban paid respondent a $2,500 retainer and agreed to pay him an additional $1,000 when the estate was settled.

The Hearing Panel sustained the five charges with respect to this matter. Charge Five had alleged that respondent's failure to diligently pursue Caban's petition for letters of administration constitutes neglect of a legal matter entrusted to him, in violation of DR 6-101 (A) (3). Charge Six alleged that respondent failed to seek the lawful objectives of Caban through reasonably available means, in violation of DR 7-101 (A) (1). Charge Seven alleged that respondent's failure to promptly refund the legal fees paid by Caban constitutes a violation of DR 9-102 (C) (4) (22 NYCRR 1200.46). Charge Eight alleged that by falsely representing to the Committee in his reply to the complaint that he would promptly return the legal fees paid by Caban, respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (A) (4), and engaged in conduct which is prejudicial to the administration of justice, in violation of DR 1-102 (A) (5). Charge Nine alleged that respondent's conduct in relation to the Caban matter reflects adversely on his fitness to practice law, in violation of DR 1-102 (A) (7) (now [8]).

The Acevedo Matter

Charges Ten through Twelve pertain to respondent's representation of Nelson Acevedo in an attempt to obtain a proper certificate of title to a car he had purchased from Robert Ezersky.

Charge Ten, which the Hearing Panel sustained, alleged that respondent's failure to diligently pursue Acevedo's case constitutes neglect of a legal matter entrusted to him, in violation of DR 6-101 (A) (3). Charge Eleven, also sustained, alleged that respondent's neglect of Acevedo's case reflects adversely on his fitness to practice law, in violation of DR 1-102 (A) (7) (now [8]).

Acevedo filed a complaint with the Committee against respondent on July 2, 1991. At a deposition in January 1993, respondent testified that he had commenced an action in the Civil Court, Bronx County, on behalf of Acevedo. A review of the County Clerk's files in November 1995 revealed no pending action. Charge Twelve, which the Hearing Panel sustained, alleged that by falsely representing to the Committee that he had filed an action on behalf of Acevedo, respondent engaged

in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (A) (4), and engaged in conduct which is prejudicial to the administration of justice, in violation of DR 1-102 (A) (5).

## The Vishnudat Matter

Charges Thirteen through Seventeen pertain to respondent's representation of James and Maureen Vishnudat.

In July 1990, James and Maureen Vishnudat retained respondent in connection with a criminal matter arising out of a dispute between the Vishnudat and Singh families. An altercation between the two families resulted in members from the Singh family filing a complaint with the District Attorney.

The Hearing Panel sustained all five charges against respondent. Charge Thirteen had alleged that by not maintaining accurate records and receipts of expenses incurred on behalf of the Vishnudats, respondent violated DR 9-102 (B) (3) (prior to the 1990 amendments). Charge Fourteen alleged that by charging the Vishnudats a fee in excess of the agreed-upon fee, respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (A) (4). Charge Fifteen alleged that by harassing the Vishnudats about payment and threatening the Vishnudats if they refused to pay him the money he demanded, respondent engaged in conduct which adversely reflects on his fitness to practice law, in violation of DR 1-102 (A) (7) (now [8]). Charge Sixteen alleged that by stating or implying that he could influence the District Attorney on the Vishnudats' behalf because he personally knew that public officer, respondent violated DR 9-101 (C) (22 NYCRR 1200.45). Charge Seventeen alleged that by not returning the Vishnudats' case file after he was requested to do so, respondent violated DR 9-102 (C) (4).

## The Rodriguez Matter

Charges Eighteen, Twenty and Twenty-One pertain to respondent's representation of Mariella Rodriguez.

Rodriguez retained respondent to represent her in a divorce action on February 10, 1992. She paid him a retainer of $400. Rodriguez terminated respondent's representation in April 1992. Respondent informed Rodriguez that he could contact her before April 17, 1990 to refund $350 of the retainer. After repeatedly attempting to obtain a refund, by September 15, 1992, respondent had only repaid $85.

In October 1992, Rodriguez filed a complaint with the Committee. In his November 30, 1992 answer to the complaint, re-

spondent falsely assured the Committee that the balance he owed to Rodriguez had been paid. Actually, respondent did not pay the full balance until December 25, 1992. On January 13, 1993, respondent admitted his misstatement to the Committee.

The Hearing Panel did not sustain Charge Eighteen, which alleged that by falsely representing to Rodriguez that he could procure a divorce for her within two months, respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (A) (4). Charge Twenty, which the Hearing Panel sustained, alleged that by falsely representing to the Committee that he had refunded Rodriguez's retainer, respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (A) (4), and engaged in conduct which is prejudicial to the administration of justice, in violation of DR 1-102 (A) (5).

Charge Twenty-One

The Hearing Panel sustained Charge Twenty-One, which alleged that respondent's pattern of failing to communicate with his clients or return their phone calls constitutes conduct which reflects adversely on his fitness to practice law, in violation of DR 1-102 (A) (6) (now [8]).

The Escrow Matter

Charges Twenty-Two and Twenty-Three pertain to the Committee's allegation that respondent misused his escrow account. The following undisputed evidence was introduced:

On May 18, 1987, the New York Department of Labor filed a judgment against respondent in the amount of $4,505.63 with the Clerk of Bronx County. Pursuant to this judgment, on February 12, 1993, the Department of Labor levied respondent's personal, nonescrow account at Chase Manhattan Bank. At the time of this levy, respondent also maintained an attorney escrow account at Citibank. After February 12, 1993, respondent deposited his personal funds into his escrow account, thereby circumventing the levy.

The Hearing Panel sustained Charge Twenty-Two, which alleged that by fraudulently using his attorney escrow account to shield his personal funds from a creditor, respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (A) (4), and conduct which is prejudicial to the administration of justice, in violation of DR 1-102 (A) (5). It also sustained Charge Twenty-Three, which alleged that by depositing his personal funds into his attorney escrow account, respondent failed to keep such account

for the exclusive use of funds belonging to another person incident to the lawyer's practice of law, in violation of DR 9-102 (B) (1).

The Hearing Panel noted the "serious and continuous nature" of respondent's misconduct, involving six separate client matters, 21 violations of the Code and four separate Canons of the Code of Professional Responsibility. The Panel also noted that respondent had two prior admonitions, in 1983 and 1989, for neglect. The Panel noted that these admonitions failed to deter respondent from further violating the duties imposed by the Code. Another aggravating factor the Panel considered was that respondent had made misrepresentations to his clients and the Committee. Finally, the Panel found a final aggravating circumstance in that respondent failed to adhere to basic norms of civility on at least two separate occasions.

As mitigating factors, the Hearing Panel took into account respondent's testimony as well as several character witnesses. The Panel was impressed with respondent's pride in his accomplishments and noted that it was not oblivious to the difficulties of respondent's law practice. The Panel stated, "we acknowledge the challenges inherent in providing legal services to members of the public who may be of limited economic means or for whom English may be a second, or unfamiliar, language." The Hearing Panel concluded, however, that these challenges cannot relieve a member of the Bar from the duties imposed by the Code.

The Hearing Panel rejected the Committee's recommendation that respondent be suspended for a period of five years and found that a three-year suspension was more appropriate.

By petition dated December 11, 1996, the Departmental Disciplinary Committee is seeking an order confirming the Hearing Panel's findings of fact and conclusions of law, and its recommendation that respondent be suspended from the practice of law for three years, or for a longer period as the Court in its discretion determines.

Respondent's attorney has submitted an affirmation in which he suggests that alternative sanctions be imposed. Counsel points to mitigating factors, such as: (1) respondent lives with his parents and conducts his law practice from home; (2) both of respondent's parents are seriously ill and respondent cares for them; (3) respondent is partially disabled himself as a result of a prior accident—he foregoes treatment because he cannot afford it; and (4) respondent's law practice has been only marginally successful.

Disciplinary cases involving attorneys who have engaged in a pattern of neglect and have received prior admonitions have usually resulted in three-year suspensions (*Matter of Moore*, 197 AD2d 254; *Matter of Segal*, 190 AD2d 295). As in the *Moore* case, respondent took advantage of clients who lacked sophistication and as the Hearing Panel found, he engaged in uncivil conduct.

Recently, this Court rejected a Hearing Panel's recommendation that a respondent be suspended for one year based upon, *inter alia*, his pattern of neglect (*Matter of Ripps*, 228 AD2d 129). In that case, the Court sustained charges of neglect with respect to seven client matters. Here, the Hearing Panel has sustained charges of neglect with respect to five client matters. Ripps committed fraud upon one of his clients by falsely informing her that her case was still pending when it in fact had been dismissed. Here, respondent committed fraud upon two of his clients and twice lied to the Committee. Lastly, Ripps had previously received two letters of admonition, one of which related to the charges under consideration. Here, respondent has received two admonitions unrelated to the instant charges.

In rejecting the *Ripps* Panel's recommendation that respondent be suspended for one year, this Court wrote: "While we agree with the Hearing Panel as to its findings and conclusions, we cannot agree with the recommended sanction. Respondent's prior record of admonitions calls for a greater period of suspension than that recommended by the Panel, and we conclude respondent should be suspended for a period of three years." *(Supra,* at 131-132.)

*Matter of Fanta* (225 AD2d 69) is also instructive. Respondent was found to have neglected six legal matters. Additionally, he was found to have committed fraud on a client with respect to one of those matters. Respondent also had two prior admonitions for neglect. The Hearing Panel recommended a two-year suspension, specifically rejecting respondent's excuses casting responsibility for his neglect on his employees. In rejecting the Hearing Panel's recommended sanction, and instead suspending respondent for a period of three years, this Court wrote: "Normally, the sanction to be imposed would be three years, especially here where the respondent has two prior admonitions for neglect *(see, Matter of Siegel*, 193 AD2d 181; *Matter of Rabinowitz*, 189 AD2d 402) and there are other aggravating factors such as deceiving one client with respect to filing for a license with the State Liquor Authority." (*Matter of Fanta*, 225 AD2d 69, 70, *supra.)*

Accordingly, the Disciplinary Committee's motion is granted and the respondent is suspended from the practice of law for a period of three years and until further order of this Court.

SULLIVAN, J. P., NARDELLI, RUBIN, MAZZARELLI and ANDRIAS, JJ., concur.

Application granted, the Hearing Panel's report confirmed, and respondent suspended from practice as an attorney and counselor-at-law in the State of New York for a period of three years, effective August 25, 1997, and until the further order of this Court.